

RECEIVED
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

SEP 0 3 2024

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

FILED
DOCKETED _____ DATE _____ INITIAL

**Form 27. Motion for** | Leave to Intervene or Leave to File Amicus Brief |

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form27instructions.pdf*

**9th Cir. Case Number(s)** | 24-4326 |

**Case Name** | Pryor v. Blackhawk |

**Lower Court or Agency Case Number** | 22-cv-07084 ND Cal. |

What is your name? | Ivan Reyes |

1. **What** do you want the court to do?

Allow movant leave to intervene as appellant or, in the alternative, for leave to file amicus brief.

2. **Why** should the court do this? Be specific. Include all relevant facts and law that would persuade the court to grant your request. *(Attach additional pages as necessary. Your motion may not be longer than 20 pages.)*

See attached.

Your mailing address:

Apartado PA-267

City | Managua | State | MG | Zip Code | 10000 Nicaragua |

Prisoner Inmate or A Number (if applicable) | |

**Signature** | /s/ Ivan Reyes | **Date** | August 28, 2024 |

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| STEVE PRYOR, | ) No. 24-4326 |
| | ) |
| Plaintiffs-Appellees, | ) |
| | ) |
| MARIAM MABEL BROWN and DAVID LOPEZ, | ) |
| | ) |
| Objectors-Appellants, | ) |
| v. | ) |
| | ) |
| BLACKHAWK NETWORK INC., | ) |
| | ) |
| Defendant-Appellee. | ) |

## MOTION FOR LEAVE TO INTERVENE; OR, MOTION FOR LEAVE TO APPEAR AS *AMICUS CURIAE*

Movant Ivan Reyes requests that this Court grant leave to intervene or to appear as *amicus curiae* and to file a brief in support of the Objector-Appellants:

### I.    THE SETTLEMENT

1.  This is a class action case relating to users of the website www.myprepaidcenter.com which had a data breach at multiple times, but in particular during October 2022.

2.  The victims of the data breach had contracts with Pathward N.A., a national bank, not Blackhawk.  Blackhawk was just the service provider. *See,* e.g., Exhibit A.  Apparently to shield Pathward from embarrassment and federal reporting requirements governing financial institutions that have data

breaches, the leak of financial information was only reported as coming from

Blackhawk (even though it was Pathward's financial data and card numbers).

Despite being an indispensable party, nobody joined Pathward in the case or

even mentioned it.

3. The website www.myprepaidcenter.com is a "white label" site and does not

   display a brand or logo for any particular bank. It does not display

   Blackhawk's logo because the account information being accessed belongs

   to non-party banks. Only in the tiny print at the bottom are the relevant parties

   identified:

   Discover® gift card and prepaid card is issued by **Pathward®, N.A.**, Member FDIC and is subject to the Cardholder Terms and Conditions. Discover and the Discover Acceptance Mark are service marks used by **Pathward** under license from Discover Financial Services. In Canada, Prepaid Mastercard® is issued by **Peoples Trust Company** under license from Mastercard International Incorporated. In the U.S., Prepaid Mastercard and Mastercard Gift Card is issued by **Pathward, N.A.**, Member FDIC, pursuant to license by Mastercard International Incorporated. Mastercard and the circles design are trademarks of Mastercard International Incorporated. In Canada, Visa* Prepaid Card is issued by **Peoples Trust Company** pursuant to licence by Visa Int. *Trademark of Visa International Service Association and used under licence by **Peoples Trust Company**. In the U.S., Visa® prepaid card and Visa gift card is issued by **Pathward, N.A.**, Member FDIC, pursuant to a license from Visa U.S.A. Inc. For **Pathward** privacy policy, visit http://www.pathwardprivacypolicy.com. View **Pathward** E.U. privacy policy. For **Peoples Trust Company** privacy policy, visit https://www.peoplestrust.com/en/legal/privacy-security/privacy. For patent information, visit blackhawknetwork.com/patent.    **©2024 Blackhawk Network, Inc**. All Rights Reserved.

4. Many consumers would not realize that a lawsuit against service-provider

   Blackhawk would relate to their Pathward N.A. prepaid bank card or class

   action settlement payment card and no efforts by class counsel or Blackhawk

   to make that clear occurred.

5. The Amended Complaint (Entry 26) in this case identified the proposed class as: "All persons Defendant identified as being among those individuals impacted by the Data Breach, including all persons who were sent a notice of the Data Breach."

6. The paper claim form (Entry 44-1, ECF page 42) told claimants: "This claim form should be filled out if you are an individual who received notice of a Data Security Incident that Blackhawk Network, Inc. d/b/a Blackhawk Engagement Solutions ("Blackhawk") disclosed in October 2022 pertaining to unauthorized access to payment card information about certain prepaid cards being managed by users through MyPrepaidCenter.com."

7. The online internet claim form did not allow consumers to file a claim unless they provided a notice ID.

8. Despite disallowing claimants that did not receive a "notice of data breach," the settlement agreement (Entry 44-1, ECF page 13) expanded the language of the class that were giving up rights to include: "All individuals whose Personally Identifiable Information or payment card information (which includes a card account number, the CVV or CVV2 number or equivalent, and/or expiration date) was impacted in Blackhawk Network, Inc.'s Data Security Incident."

9. The definition of the class as defined in the settlement agreement waived the rights of those affected by the stolen data but who did not receive a "notice of data breach."

10. However, as explained above, the claim form prohibited claims from people who did not receive a "notice" from filing a claim regardless of their losses. Therefore, the members of the group who did not receive a notice provided zero benefit to them.

11. Finally, it is not explained how these members who did not receive notice could have learned about the class action considering that Class Counsel only sent clam forms to those who received a notice of data breach from Blackhawk.

## II. BLACKHAWK'S REFUSAL TO ASSIST CLIENTS IN DETERMINING IF THEY ARE CLASS MEMBERS WHO WERE AFFECTED BY THE DATA BREACH

12. Movant maintains a Pathward prepaid card awarded to him in the Optical Disk Drive Settlement, 3:10-md-02143 (N.D. Cal.). Pursuant to that settlement, Movant received a prepaid card from Pathward. Under that settlement, the card was to be preactivated without the need for any registration. See Exhibit B. The card utilized www.myprepaidcenter.com to provide the balance. Blackhawk is mentioned in the contract as a service provider, but the agreement is with Pathward. Nothing in the agreement placed the funds

under the custodianship of Blackhawk. Rather, Pathward was and is the custodian.

13.   Nevertheless, without notice, the card stopped working shortly after the www.myprepaidcenter.com data breach.  Based on information, this block of Movant's funds originated with Blackhawk.

14.   Movant's losses, as a result of being blocked from using his card, and Pathward's failure to replace the card, exceed $2,480.

15.   At the time, Movant did not know that Blackhawk was responsible for his card or the improper blocking of funds.  Instead, Movant believed Pathward maintained his financial data securely in a manner not subject to random data breaches.

16.   Movant learned of the Blackhawk data breach class action in April 2024 and that his card was serviced through Blackhawk's weakly secured site www.myprepaidcenter.com and that Blackhawk, not Pathward, froze his funds but did not issue a new card to the address on file.[1]

17.   On April 9, 2024, Movant contacted Blackhawk to determine whether he was subject to the data breach with www.myprepaidcenter.com .  Movant stated, "*Greetings, I read about a data breach of myprepaidcenter.com and would like to know if my card was affected by this breach.  The proxy*

---

[1] Movant used a USA based freight forwarder to obtain his card pursuant to instructions from the claims administrators in the Optical Disk Drive lawsuit wherein they advised him to have the card sent to any USA address.

*number for the account is 6039530407049438953. Please reply and let*
*me know.. Ivan Reyes.*"

18.   On the same date, Blackhawk acknowledged receipt of the inquiry and
      assigned case number CS12760783.

19.   On May 31, 2024, the district court held the fairness hearing.

20.   On June 5, 2024, the district court entered final judgment approving the
      settlement even though it waived the rights of people who were prohibited by
      the language on the form to submit a claim.

21.   The district court also approved language waiving provisions of various
      state laws that prohibit settlement of unknown claims unless voluntarily waived
      – even though non-present class members may not have known about the
      suit.

22.   Blackhawk waited until after final judgment to respond to Movant's inquiry
      about the data breach. On June 22, 2024, Blackhawk refused to advise
      Movant whether he was subject to the data breach. Blackhawk stated, "For us
      to continue working on this request, we will kindly ask you to reply to this email
      with the following information: a. Full name  b. Date of birth  c. Home
      address   d. Government-issued identification number (For US person, this is
      the SSN; for non-US person, this is a passport number and country of
      issuance; an alien identification card number; or a number and country of
      issuance of any other unexpired, photo-bearing government-issued

document evidencing nationality or residence).    Once the documents above

are received and validated a resolution will be provided.  We look forward to

hearing from you.  Regards,  Samuel I.  Customer Experience Specialist II."[2]

23.    By refusing to promptly answer the simple question as to whether Movant's

account was affected by the data breach, and waiting three weeks until after

May 31, 2024, to advise that it would not answer the question, Blackhawk

deliberately impaired and impeded Movant from contacting the district court

to express serious concerns with the settlement.

24.    Based on information, Blackhawk deliberately withheld this information until

after judgment as to <u>hundreds</u> of inquiries from potential class members who

did not "receive a notice" and were not eligible to file a claim, but who may

have been impacted and had their rights taken away by the broad language of

the settlement.

25.    Importantly, no reasonable consumer would provide identification

documents to a data breach prone company that the person had no

agreement with just to find out if they were subject to a data breach or a

member of the class.  A reasonable person would expect to be told by

Blackhawk whether they were a victim of the hacker infiltrated website.

---

[2] The request for this information appears inappropriate. Blackhawk and Pathward participated in
funds distribution in a class action lawsuit and promised the cards would be delivered pre-activated
without the need for registration. It was based on this promise that claimants chose the card instead
of a paper check or other form of payment.

26.   Because of Blackhawk's actions in refusing to timely respond to the inquiry and then, after judgment was entered, demanding irrelevant data, Movant was not able to seek leave to present his objections to the district court prior to the May 31, 2024, final settlement hearing.

27.   This was aggravated by the fact that the notice program in the case did not include any form of advertising or paid media.

### III. Right to Intervention

28.   This Court held that because there exists no rule or statute, intervention on appeal is governed by the same policies as a motion to for leave to intervene under Federal Rule of Civil Procedure 24. *East Bay Sanctuary Covenant v. Biden,* 102 F4th 996, 1001 (9th Cir. 2024).

29.   To intervene as of a right, the Movant should show that: (1) the motion is timely; (2) he has a "significantly protectable interest relating to the property or transaction which is the subject of the action;" (3) "the disposition of the action may as a practical matter impair or impede [his] ability to protect that interest;" and (4) his "interest is inadequately represented by the parties to the action." *Id* (citations omitted).

30.   In this case, the motion is timely.  Movant could not intervene in the district court prior to judgment because he did not know he had a relationship with Blackhawk since his card was a Pathward N.A. card.  Movant asked Blackhawk pointedly on April 9, 2024 – nearly two months before the fairness hearing occurred – but Blackhawk deliberately sat on the request until June

22, 2024 (after judgment), and then demanded irrelevant documents just to find out if Movant was affected by the breach.

31.    Movant has a "significantly protectable interest relating to the property or transaction which is subject to the action" because he lost $2,480 due to Blackhawk's breach ridden system that resulted in his card being frozen. Blackhawk's claims that they provided new cards is false. Blackhawk retained the money and refused to advise Movant whether he was subject to the breach.

32.    The disposition of this appeal "may as a practical matter impair or impede his ability to protect that interest."   Specifically, in this case, people who did not receive notices from Blackhawk were prohibited from filing claims according to the claim form, but the definition of the class included all persons affected not only persons who received the form.

33.    Movant's interests are inadequately protected by the appellants in this case. Unlike the thousands of people similarly situated to Movant, the appellants were advised by Blackhawk that their account was affected by the breach and they had an opportunity to object.  Therefore, there is no reason the Appellants in this case will be arguing for people affected but who did not have time to object, or that Blackhawk's notice procedures were woefully inadequate and unfair where it brazenly refused to simply tell Movant whether his account was affected.

34.    Finally, the appellants are *pro se* and it is unclear whether they will be able to adequately inform this Court of the facts and law that will protect the rights of persons similar to Movant.

35.    Alternatively, this Court can permissively grant intervention under Civil Rule 24(b)(1)(B) as a matter of discretion. In this appeal, this Court will have a fiduciary duty to the absent class members. The court thus owes a fiduciary duty to the class to ensure that the interests of every member of the class are adequately represented. This requirement of adequate representation is intended to protect the due process rights of absent class members. See *Hanlon v Chrysler Corp*, 150 F.3d 1011, 1020 (9th Cir 1998) (citing *Hansberry v Lee*, 311 U.S. 32, 42-43 (1940)).

36.    The court's obligation to evaluate the adequacy of the class representative and counsel continues throughout the litigation. See *Foe v Cuomo*, 892 F.2d 196, 198 (2d Cir 1989).

37.    Movant will thus assist this Court with its fiduciary duty to the class members who may not have been adequately represented below, especially with Blackhawk's unreasonable refusal to disclose to clients whether their Pathward accounts were affected by the breach.

## IV. IF INTERVENTION IS NOT WARRANTED, MOVANT REQUESTS LEAVE TO FILE AN AMICUS BRIEF

38.    If this Court finds that intervention is not appropriate, Movant can inform this Court of the harm from the settlement that affects persons who were not

notified of the breach and, thus, were prohibited from filing a claim form but were subject to the waiver of rights with no benefit through an *amicus* brief.

39.   Therefore, Movant alternatively requests leave to file an *amicus* brief.

40.   Movant has an interest, having lost access to over \$2,480 on a Pathward prepaid card because Blackhawk – a company he has no relationship with – chose to freeze it and keep his funds for its own use.

WHEREFORE, Movant respectfully requests leave to intervene or, in the alternative, for leave to file a brief *amicus curiae*.

Respectfully submitted,

Ivan Reyes
Apartado PA-267
Managua 10000
Republic of Nicaragua
ivan.reyes@find.cr

MOVANT

1000312

**List of all fees ("Long Form")** for Disbursements Prepaid Mastercard Card

| All fees | Amount | Details |
|---|---|---|
| **Get Started** | | |
| Card purchase | $0 | |
| **Spend money** | | |
| POS Transactions With PIN | $0 | Per purchase |
| POS Transactions Without PIN | $0 | Per purchase. POS transactions without PIN include both signature-based transactions and all PIN-less transactions without a signature |
| **Get cash** | | |
| ATM Withdrawal Fee - U.S./Domestic | $2.50 | This is our fee. You may also be charged a fee by the ATM operator, even if you do not complete a transaction. |
| **Information** | | |
| Customer Service (automated or live agent) | $0 | |
| ATM Balance Inquiry – U.S. | $1.00 | This is our fee. You may also be charged a fee by the ATM operator, even if you do not complete a transaction. |
| **Using your Card outside the U.S.** | | |
| Foreign Transaction Fee | 2% | Of the U.S. dollar amount of each transaction. |
| ATM Withdrawal Fee - International | $3.50 | This is our fee. You may also be charged a fee by the ATM operator, even if you do not complete a transaction. |
| ATM Balance Inquiry - International | $1.00 | This is our fee. You may also be charged a fee by the ATM operator, even if you do not complete a transaction. |
| **Other** | | |
| Inactivity Fee | $5.95 | You will be charged $5.95 each month after you have not completed a transaction using your card for 12 months. |
| Card Replacement Fee | $6.95 | Card Replacement Fee for lost or stolen cards. If your card has expired, a fee will not be charged. |
| Expedited Delivery Fee | $20.00 | Fee for expedited shipping. |
| Check Request Fee | $10.00 | If you opt to have a check issued for the value on your card, this fee will be removed from your balance prior to check being issued. |

Your funds are eligible for deposit insurance up to the applicable limits by the Federal Deposit Insurance Corporation ("FDIC"). Your funds will be held at Pathward®, N.A. or placed by Pathward as custodian at one or more participating FDIC-insured banks (each a "Program Bank"). In the event the FDIC were to be appointed as a receiver for Pathward or a Program Bank, your funds, aggregated with any other funds you have on deposit at such institution, would be eligible to be insured up to $250,000 for each legal category of account ownership, subject to compliance with FDIC deposit insurance requirements. You are responsible for monitoring the total amount of all direct or indirect deposits held by you or for you with Pathward and the Program Banks for purposes of monitoring the amount of your funds eligible for coverage by FDIC insurance. To assist with calculating your FDIC deposit insurance coverage, the FDIC has an Electronic Deposit Insurance Estimator available at https://edie.fdic.gov. For more information, see also https://www.fdic.gov/deposit/deposits/prepaid.html.

No overdraft/credit feature.

Contact Customer Service by calling 833-249-7650, by mail at P.O. Box 9018; Coppell, TX 75019, or visit www.myprepaidcenter.com.

For general information about prepaid accounts, visit cfpb.gov/prepaid. If you have a complaint about a prepaid account, call the Consumer Financial Protection Bureau at 1-855-411-2372 or visit cfpb.gov/complaint.

# EXHIBIT A

## Disbursements Prepaid Mastercard Cardholder Agreement

**CUSTOMER SERVICE CONTACT INFORMATION:**
**Address:** P.O. Box 9018; Coppell, TX 75019
**Website:** www.MyPrepaidCenter.com
**Phone Number:** 833-249-7650 (toll free in USA); 339-234-6415 (outside USA)

**IMPORTANT NOTICES:**
(1) PLEASE READ CAREFULLY. THIS AGREEMENT CONTAINS AN ARBITRATION PROVISION ("ARBITRATION CLAUSE" SECTION) REQUIRING ALL CLAIMS TO BE RESOLVED BY WAY OF BINDING ARBITRATION.
(2) ALWAYS KNOW THE EXACT DOLLAR AMOUNT AVAILABLE ON THE CARD. MERCHANTS MAY NOT HAVE ACCESS TO DETERMINE THE CARD BALANCE.
(3) BY ACCEPTING, SIGNING, OR USING THIS CARD, YOU AGREE TO BE BOUND BY THE TERMS AND CONDITIONS CONTAINED IN THIS AGREEMENT.
(4) THIS CARD IS BEING PROVIDED AS THE SOLE METHOD TO RECEIVE YOUR FUNDS DISBURSEMENT. CONSULT THE CORPORATE SPONSOR IF YOU HAVE ANY QUESTIONS REGARDING DISBURSEMENT, AS YOU MAY NOT HAVE RECOURSE IF YOU DISPOSE OF OR CHOOSE NOT TO USE THIS CARD.
(5) BY USING THIS CARD, YOU ARE ALSO AGREEING TO PATHWARD®, NATIONAL ASSOCIATION'S PRIVACY POLICY (ATTACHED). PROGRAM MANAGERS MAY HAVE DIFFERENT PRIVACY PRACTICES, SO IT IS IMPORTANT YOU REVIEW THEIR POLICY AS WELL, IF APPLICABLE.

This Cardholder Agreement (**"Agreement"**) sets forth the terms and conditions under which the Disbursements Prepaid Mastercard (**"Card"**) has been issued to you by Pathward, National Association. **"You"** and **"your"** means the person or persons who have received and are authorized to use the Card as provided for in this Agreement. **"We," "us,"** and **"our"** mean collectively, Pathward, National Association, a federally-chartered bank, member FDIC, and its divisions or assignees, and also includes, unless otherwise indicated, our Program Manager. **"Program Manager"** refers to Blackhawk Network, Inc., who performs certain services related to your Card on Pathward, National Association's behalf. **"Corporate Sponsor"** means the company who has directly or indirectly established this Card for the purpose of disbursing funds to you. The Card is nontransferable, and it may be canceled at any time without prior notice subject to applicable law. Please read this Agreement carefully and keep it for future reference. Your full fee schedule, otherwise known as the **"Long Form,"** is attached to and considered part of this Agreement.

### 1. ABOUT YOUR CARD

Your Card is a prepaid card, which allows you to access funds loaded to your Card account by the Corporate Sponsor. You should treat your Card with the same care as you would treat cash. We encourage you to sign your Card when you receive it. This Card is intended for personal, family, or household use and not intended for business purposes. Your Card account does not constitute a checking or savings account and is not connected in any way to any other account you may have. The Card is not a gift card, nor is it intended to be used for gifting purposes. The Card is not a credit card. You will not receive any interest on the funds in your Card account. We may close your Card or refuse to process any transaction that we believe may violate the terms of this Agreement or represents illegal or fraudulent activity. You are responsible for notifying us immediately upon any change to your address, phone number, or email address. If your address changes to a non-US address, we may cancel your Card and return funds to you in accordance with this Agreement.

If you would prefer to obtain the funds on the Card by check, you must call the Customer Service Number and request the funds be disbursed to you via check. There is a fee for issuing a check (a "Check Request Fee"), as noted in the Fee Chart above. A check may take up to 30 days to be processed and delivered to you domestically, and up to 45 days internationally. If your card is non-reloadable, as stated on the card plastic, effectively immediately upon your request for a check, this Card will no longer be valid.

Pathward, N.A. will act as custodian of your funds upon its receipt of your funds. Once your Card is activated, you will be able to provide Pathward, as custodian, with instructions about the funds accessible through the Card. Activation of the Card authorizes us to hold your funds at Pathward or as custodian to place your funds at one or more participating FDIC-insured banks (each a **"Program Bank"**). Visit www.pathwardprogrambanks.com to find the most up-to-date list of Program Banks. If you do not agree to your funds being held by us at Pathward or placed by Pathward as custodian at other Program Banks, please immediately transfer or spend all the funds on your Card. For more information on FDIC deposit insurance limits and related conditions, please refer to the Long Form section at the beginning of this Agreement.

### 2. REGISTERING YOUR CARD

You are not required to register your Card. If you choose not to do so, you will be limited in functionality and protections, as indicated throughout the Agreement. If you would like to enable additional functionalities such as online or phone purchases, or ensure your Card is protected by FDIC insurance, you must register your Card. You can do so by going to www.myprepaidcenter.com or calling Customer Service.

### 3. BUSINESS DAYS

**For purposes of this Agreement, our business days are Monday through Friday, excluding Federal holidays. Customer Service hours may differ.**

### 4. USING YOUR CARD

#### a. Accessing Funds

You have arranged to have funds transferred directly to your Card from the Corporate Sponsor through Automated Clearing House ("ACH") loads. This is the only load method for your Card account. Each time you use your Card, you authorize us to reduce the value available on your Card by the amount of the transaction and applicable fees. If you use your Card number without presenting your Card (such as for an internet transaction, a mail order or a telephone purchase), the legal effect will be the same as if you used the Card itself. You may use your Card to purchase or lease goods or services wherever your Card is honored as long as you do not exceed the value available on your Card account.

**You CANNOT use your Card to:** (i) exchange your Card for its cash value; (ii) perform any illegal transactions; (iii) use the bank routing number and account number to make a debit transaction with any item processed as a check (these debits will be declined and your payment will not be processed); (iv) make business-related transactions; or (v) use your Card for purchases where recurring payments may occur, such as recurring bill payments, subscriptions, memberships, rentals, etc.. In addition, YOU ARE NOT PERMITTED TO EXCEED THE AVAILABLE AMOUNT IN YOUR CARD ACCOUNT THROUGH AN INDIVIDUAL TRANSACTION OR A SERIES OF TRANSACTIONS. Nevertheless, if a transaction exceeds the balance of the funds available in your Card account, you will remain fully liable to us for the amount of the transaction and agree to pay us promptly for the negative balance. If your Card has a negative balance, any deposits will be used to offset the negative balance. We may also use any deposit or balance on another Card you have with us to offset a negative balance on this Card.

**Split Transactions:** If you do not have enough funds available in your Card account, you may be able to instruct the merchant to charge a part of the purchase to the Card and pay the remaining amount with another form of payment. These are called "split transactions." Some merchants do not allow cardholders to split transactions or will only allow you to do a split transaction if you pay the remaining amount in cash.

#### b. Limits

| Load, Withdrawal and Spend Limits* | |
| --- | --- |
| **Load Limitations** | **Limit** |
| Maximum Card Balance at any time | $10,000 |
| Total number of times the Corporate Sponsor can reload your Card | If the word "NON-RELOADALBE" is printed on your card, the Corporate Sponsor cannot reload your Card. Otherwise, there are no limits to the number of times the Corporate Sponsor can reload your Card, but your balance cannot exceed the Maximum Card Balance |
| Maximum amount of Corporate Sponsor loads | $10,000 |
| **Withdrawal Limitations** | **Limit** |
| Total number of ATM withdrawals | Two (2) ATM cash withdrawals per day |
| Maximum amount of ATM cash withdrawal | No more than $500 total per twenty-four (24) hours |
| **Spend Limitations** | **Limit** |
| Maximum amount in Point of Sale Signature or Point of Sale PIN Transactions | There are no specific dollar limitations for POS transactions; however, we may decline any transaction if we reasonably suspect illegal or unauthorized use of your Card |

* Third parties may impose additional limitations.

#### c. Foreign Transactions

If you obtain your funds (or make a purchase) in a currency or country other than the currency or country in which your Card was issued (**"Foreign Transaction"**), the amount deducted from your funds will be converted by the network or card association that processes the transaction into an amount in the currency of your Card. The rate they choose is either: (i) selected from the range of rates available in wholesale currency markets (which may vary from the rate the association itself receives), or (ii) the government-mandated rate in effect for the applicable central processing date. The conversion rate selected by the network is independent of any fee that we charge as compensation for our services. You will be charged a fee for Foreign Transactions in U.S. dollars equal to 2% on the total amount of the transaction. If the Foreign Transaction results in a credit due to a return, we will not refund any fee that may have been charged on your original purchase.

### 5. CONFIDENTIALITY

We may disclose information to third parties about your Card account or the transactions you make:
(1) Where it is necessary for completing transactions;
(2) In order to verify the existence and condition of your Card account for a third party, such as merchant;
(3) In order to comply with government agency or court orders, or other legal reporting requirements;
(4) If you give us your written permission;
(5) To our employees, auditors, affiliates, service providers, or attorneys as needed; or
(6) As otherwise necessary to fulfill our obligations under this Agreement.

### 6. DOCUMENTATION

#### a. Receipts

You may be able to get a receipt at the time you make any transfer to or from your account using an ATM or point-of-sale terminals. You may need a receipt in order to verify a transaction with us or the merchant.

#### b. Account History and Balance

You may obtain information about your Card balance by calling Customer Service. This information, along with a 12—month history of account transactions, is also available online at the Website mentioned above.

You also have the right to obtain at least 24 months of written history of account transactions by

calling or by writing Customer Service. You will not be charged a fee for this information unless you request it more than once per month.

## 7. TRANSACTIONS AND PREAUTHORIZED TRANSFERS

### a. Right to stop payment and procedure for doing so

You are not permitted to use your Card to make recurring payments (such as recurring bill payments, subscriptions, memberships, rentals, etc.), and we will decline these payments if you attempt to make them.

### b. Our liability for failure to complete transactions

If we do not complete a transaction to or from your Card account on time or in the correct amount according to our Agreement with you, we will be liable for your losses and damages proximately caused by us. However, there are some exceptions. We will not be liable, for instance:

(1) if, through no fault of ours, you do not have enough funds available in your Card account to complete the transaction;

(2) if a merchant refuses to accept your Card;

(3) if an ATM where you are making a cash withdrawal does not have enough cash;

(4) if an electronic terminal where you are making a transaction does not operate properly and you knew about the problem when you initiated the transaction;

(5) if access to your Card has been blocked after you reported your Card or PIN lost or stolen;

(6) if there is a hold or your funds are subject to legal process or other encumbrance restricting their use;

(7) if we have reason to believe the requested transaction is unauthorized;

(8) if circumstances beyond our control (such as fire, flood or computer or communication failure) prevent the completion of the transaction, despite reasonable precautions that we have taken; or

(9) For any other exception stated in our Agreement with you.

### c. ATM Fees

When you use an ATM not owned by us, you may be charged a fee by the ATM operator (and you may be charged a fee for a balance inquiry even if you do not complete a fund transfer).

### d. Authorization Holds

With certain types of purchases (such as those made at restaurants, hotels, or similar purchases), your Card may be "preauthorized" for an amount greater than the transaction amount to cover gratuity or incidental expenses. Any preauthorization amount will place a "hold" on your available funds until the merchant sends us the final payment amount of your purchase. Once the final payment amount is received, the preauthorization amount on hold will be removed. During this time, you will not have access to preauthorized amounts. If you authorize a transaction and then fail to make a purchase of that item as planned, the approval may result in a hold for that amount of funds.

## 8. ADDITIONAL TERMS OF THE AGREEMENT

### a. Personal Identification Number ("PIN")

If you wish to make PIN debit purchases, you may obtain a PIN by visiting the Website or calling the Customer Service Number. **Cards cannot be used to obtain cash back in any purchase transaction.** You should not write or keep your PIN with your Card. Never share your PIN with anyone and do not enter your PIN into any terminal that appears to be modified or suspicious. If you believe that there has been unauthorized access to your PIN, you should contact Customer Service immediately, following the procedures in the section labeled "Unauthorized Transactions."

### b. Returns and Refunds

If you are entitled to a refund for any reason for goods or services obtained with your Card, the return and refund will be handled by the merchant. If the merchant credits your Card, the credit may not be immediately available. While merchant refunds post as soon as they are received, please note that we have no control over when a merchant sends a credit transaction and the refund may not be available for a number of days after the date the refund transaction occurs. We are not responsible for the quality, safety, legality, or any other aspect of any goods or services you purchase with your Card.

### c. Card Replacement and Expiration

If you need to replace your Card for any reason, please contact Customer Service to request a new Card, but note that we will charge a Card Replacement Fee. See Long Form for applicable fees. Please note that your Card has a "Valid Thru" date on the front of the Card. You may not use the Card after the "Valid Thru" date on the front of your Card. However, even if the "Valid Thru" date has passed, the available funds on your Card do not expire. You will not be charged a fee for replacement cards that we send due to expiration of the Card.

### d. Authorized Users

If you allow another person to use the Card, you will be responsible under this Agreement for all transactions made by that person, regardless of whether you intended to be responsible for all of them, as well as all associated fees and charges, even if any of those transactions, fees or charges caused your balance to go negative.

### e. Communications

You agree that we may monitor and record any calls or other communications between us and you. You also agree that we or our service providers may contact you with any contact information you provide to us, including cellular and wireless phone numbers, landline numbers, and email addresses. You also agree that we or our service providers may contact you by using an automated dialing or email system, by text, or artificial or recorded voice. You agree to pay any service charges assessed by your plan provider for communications we send or make to you or that you send or make to us.

## 9. UNAUTHORIZED TRANSACTIONS

If you believe your Card has been lost or stolen or an unauthorized transaction has been made using the information from your Card without your permission, contact Customer Service IMMEDIATELY. We will ask for the Card number and other identifying details. We may not be able to assist you if you do not have the Card number. We may not be able to assist you if

you do not contact us within 60 days of the unauthorized transaction. We will charge a fee as noted in the fee table above (subject to applicable law) for any lost/stolen Card, which will be deducted from the balance on the Card. A reissued Card may take up to 30 days to process. **Your registered Card may have some additional protections against unauthorized use:** Under Mastercard's Zero Liability Policy, your liability for unauthorized transactions on your Mastercard-branded Card is $0.00 if you notify us promptly upon becoming aware of the loss or theft, and you exercised reasonable care in safeguarding your Card from loss, theft, or unauthorized use. This policy limiting your liability does not apply to debit transactions not processed by Mastercard, certain commercial transactions, or unregistered cards.

## 10. LEGAL NOTICES

### a. English Language Controls

Translations of this Agreement that may have been provided are for your convenience only and may not accurately reflect the original English meaning. The meanings of terms, conditions, and representations herein are subject to definitions and interpretations in the English language.

### b. Account Closure

You may close your Card at any time by contacting Customer Service. Your request for Card closure will not affect any of our rights or your obligations arising under this Agreement prior to the request. Should your Card account be closed, we will issue you a credit for any unpaid balances, subject to fees as disclosed in the Long Form. We reserve the right to close your Card account should you complete or attempt to complete any of the prohibited actions in this Agreement.

### c. Assignability

You may not assign or transfer your Card or your obligations under this Agreement. We may, however, transfer or assign our rights under this Agreement, including any balances in your Card account. If we assign our rights, you will get a notification from us.

### d. Legal Process

Regardless of where or how we are served, we will comply with any state or federal legal process, including, without limitation, any writ of attachment, adverse claim, execution, garnishment, tax levy, restraining order, subpoena or warrant we believe to be valid relating to you or your Card. You agree that we will honor legal process that is served personally, by mail, or by facsimile transmission at any of our offices (including locations other than where the funds, records or property sought is held), even if the law requires personal delivery at the office where your Card account records are maintained. You agree that we will have no liability to you for honoring any such legal process. You also agree that we will have no obligation to assert on your behalf any applicable exemptions to execution or attachment under any applicable state or federal law. We will enforce a right of security interest against any of your Card accounts in order to reimburse us for our fees and expenses, including attorneys' fees, court costs and expenses, in complying with legal process. We may refuse to permit withdrawals or transfers from your account until such legal process is satisfied or dismissed, even if such action results in insufficient funds to satisfy an obligation you may have incurred. We may deduct such expenses from your Card account or any other account you may have with us without prior notice to you, or we may bill you directly for such expenses and fees. You agree to release and indemnify, defend and hold us harmless from all actions, claims, liabilities, losses, costs and damages including, without limitation, attorneys' fees, associated with our compliance with any legal process. When we receive an order instructing us to restrict access to funds in a Card account, we may remove the funds from the account and maintain them separately.

### e. Other Terms

You will be notified of any change to this Agreement in the manner required by applicable law prior to the effective date of the change. However, if the change is made for security purposes, we can implement such change without prior notice. We do not waive our rights by delaying or failing to exercise them at any time (for example, assessing a fee less than described, or not all, for any reason does not waive our right to begin charging the fee as set forth in this Agreement without notice). If any provision of this Agreement is determined to be invalid or unenforceable under any rule, law, or regulation of any governmental agency, local, state, or federal, the validity or enforceability of any other provision of this Agreement will not be affected. This Agreement will be governed by the law of the state of South Dakota except to the extent governed by federal law. Should your Card have a remaining balance after a certain period of inactivity, we may be required to remit the remaining funds to the appropriate state agency.

## 11. PRIVACY

We may provide information to our employees, auditors, affiliates, service providers, or attorneys as needed, or to any third party if you give us your written permission. We may also collect: (1) information about purchases made with the Card, such as date of purchase, amount and place of purchase; (2) information you provide to us when you register a Card, or for replacement Cards, or when you contact us with customer service issues, such as name, address, phone number. We may also disclose information about the Card or the transactions you make to third parties in order to: (1) complete transactions; (2) verify the existence and condition of the Card for a third party, such as merchant; (3) provide customer services; (4) process claims for lost or stolen Cards; (5) help protect against fraud and to conduct research and analysis; or (6) comply with government agency or court orders, or other legal requirements.

## 12. JURY TRIAL WAIVER

YOU AND WE ACKNOWLEDGE THAT THE RIGHT TO TRIAL BY JURY IS A CONSTITUTIONAL RIGHT BUT MAY BE WAIVED IN CERTAIN CIRCUMSTANCES. TO THE EXTENT PERMITTED BY LAW, YOU AND WE KNOWINGLY AND VOLUNTARILY WAIVE ANY RIGHT TO TRIAL BY JURY IN THE EVENT OF LITIGATION ARISING OUT OF OR RELATED TO THIS AGREEMENT. THIS JURY TRIAL WAIVER WILL NOT AFFECT OR BE INTERPRETED AS MODIFYING IN ANY FASHION THE ARBITRATION CLAUSE SET FORTH IN THE FOLLOWING SECTION, WHICH CONTAINS ITS OWN JURY TRIAL WAIVER.

## 13. ARBITRATION CLAUSE

We have put this Arbitration Clause in question and answer form to make it easier to follow. However, this Arbitration Clause is part of this Agreement and is legally binding. For purposes of this section, our **"Notice Address"** is: Pathward, N.A., Attn: Customer Service, 5501 S Broadband Ln, Sioux Falls, SD 57108.

## Background and Scope.

| Question | Short Answer | Further Detail |
|---|---|---|
| What is arbitration? | An alternative to court | In arbitration, a third party arbitrator ("Arbitrator") solves Disputes in an informal hearing. |
| Is it different from court and jury trials? | Yes | The hearing is private. There is no jury. It is usually less formal, faster and less expensive than a lawsuit. Pre-hearing fact finding is limited. Appeals are limited. Courts rarely overturn arbitration awards. |
| Can you opt-out of this Arbitration Clause? | Yes, within 60 days | If you do not want this Arbitration Clause to apply, you must send us a signed notice within 60 calendar days after you acquire the Card. You must send the notice in writing (and not electronically) to our Notice Address. Provide your name, address and Card number. State that you "opt out" of the Arbitration Clause. |
| What is this Arbitration Clause about? | The parties' agreement to arbitrate Disputes | Unless prohibited by applicable law and unless you opt out, you and we agree that you or we may elect to arbitrate or require arbitration of any "Dispute" as defined below. |
| Who does the Arbitration Clause cover? | You, us and certain "Related Parties" | This Arbitration Clause governs you and us. It also covers certain "Related Parties": (1) our parents, subsidiaries and affiliates; (2) our employees, directors, officers, shareholders, members and representatives; and (3) any person or company that is involved in a Dispute you pursue at the same time you pursue a related Dispute with us. |
| What Disputes does the Arbitration Clause cover? | All Disputes (except certain Disputes about this Arbitration Clause) | This Arbitration Clause governs all "Disputes" that would usually be decided in court and are between us (or any Related Party) and you. In this Arbitration Clause, the word "Disputes" has the broadest reasonable meaning. It includes all claims even indirectly related to your Card or this Agreement. It includes claims related to the validity in general of this Agreement. **However, it does not include disputes about the validity, coverage or scope of this Arbitration Clause or any part of this Arbitration Clause. (This includes a Dispute about the rule against class arbitration.) All such disputes are for a court and not an Arbitrator to decide.** |
| Who handles the arbitration? | Usually AAA or JAMS | Arbitrations are conducted under this Arbitration Clause and the rules of the arbitration administrator in effect when the arbitration is started. However, arbitration rules that conflict with this Arbitration Clause do not apply. The arbitration administrator will be either:<br>• The American Arbitration Association ("AAA"), 1633 Broadway, 10th Floor, New York, NY 10019, www.adr.org.<br>• JAMS, 620 Eighth Avenue, 34th Floor, New York, NY 10018, www.jamsadr.com.<br>• Any other company picked by agreement of the parties.<br>If all the above options are unavailable, a court will pick the administrator. No arbitration may be administered without our consent by any administrator that would permit a class arbitration under this Arbitration Clause. The arbitrator will be selected under the administrator's rules. However, the arbitrator must be a lawyer with at least ten years of experience or a retired judge unless you and we otherwise agree. |
| Can Disputes be litigated? | Sometimes | Either party may bring a lawsuit if the other party does not demand arbitration. We will not demand arbitration of any lawsuit you bring as an individual action in small-claims court. However, we may demand arbitration of any appeal of a small-claims decision or any small-claims action brought on a class basis. |
| Are you giving up any rights? | Yes | For Disputes subject to this Arbitration Clause, you give up your right to:<br>1. Have juries decide Disputes.<br>2. Have courts, other than small-claims courts, decide Disputes.<br>3. Serve as a private attorney general or in a representative capacity.<br>4. Join a Dispute you have with a dispute by other consumers.<br>5. Bring or be a class member in a class action or class arbitration.<br>We also give up the right to a jury trial and to have courts decide Disputes you wish to arbitrate. |
| Can you or another consumer start a class arbitration? | No | **The Arbitrator is not allowed to handle any Dispute on a class or representative basis.** All Disputes subject to this Arbitration Clause must be decided in an **individual** arbitration or an **individual** small-claims action. This Arbitration Clause will be void if a court rules that the Arbitrator can decide a Dispute on a class basis and the court's ruling is not reversed on appeal. |
| What law applies? | The Federal Arbitration Act ("FAA") | This Agreement and the Cards involve interstate commerce. Thus, the FAA governs this Arbitration Clause. The Arbitrator must apply substantive law consistent with the FAA. The Arbitrator must honor statutes of limitation and privilege rights. Punitive damages are governed by the constitutional standards that apply in judicial proceedings. |
| Will anything I do make this Arbitration Clause ineffective? | No | This Arbitration Clause stays in force even if: (1) you or we end this Agreement; or (2) we transfer or assign our rights under this Agreement. |

## Process.

| | | |
|---|---|---|
| What must a party do before starting a lawsuit or arbitration? | Send a written Dispute notice and work to resolve the Dispute | Before starting a lawsuit or arbitration, the complaining party must give the other party written notice of the Dispute. The notice must explain in reasonable detail the nature of the Dispute and any supporting facts. If you are the complaining party, you must send the notice in writing (and not electronically) to our Notice Address. You or an attorney you have personally hired must sign the notice and must provide the Card number and a phone number where you (or your attorney) can be reached. A letter from us to you will serve as our written notice of a Dispute. Once a Dispute notice is sent, the complaining party must give the other party a reasonable opportunity over the next 30 days to resolve the Dispute on an individual basis. |
| How does an arbitration start? | Mailing a notice | If the parties do not reach an agreement to resolve the Dispute within 30 days after notice of the Dispute is received, the complaining party may commence a lawsuit or an arbitration, subject to the terms of this Arbitration Clause. To start an arbitration, the complaining party picks the administrator and follows the administrator's rules. If one party begins or threatens a lawsuit, the other party can demand arbitration. This demand can be made in court papers. It can be made if a party begins a lawsuit on an individual basis and then tries to pursue a class action. Once an arbitration demand is made, no lawsuit can be brought and any existing lawsuit must stop. |
| Will any hearing be held nearby? | Yes | The Arbitrator may decide that an in-person hearing is unnecessary and that he or she can resolve a Dispute based on written filings and/or a conference call. However, any in-person arbitration hearing must be held at a place reasonably convenient to you. |
| What about appeals? | Very limited | Appeal rights under the FAA are very limited. The Arbitrator's award will be final and binding. Any appropriate court may enter judgment upon the arbitrator's award. |

## Arbitration Fees and Awards.

| | | |
|---|---|---|
| Who bears arbitration fees? | Usually, we do. | We will pay all filing, administrative, hearing and Arbitrator fees if you act in good faith, cannot get a waiver of such fees and ask us to pay. |
| When will we cover your legal fees and costs? | If you win | If you win an arbitration, we will pay the reasonable fees and costs for your attorneys, experts and witnesses. We will also pay these amounts if required under applicable law or the administrator's rules or if payment is required to enforce this Arbitration Clause. The Arbitrator shall not limit his or her award of these amounts because your Dispute is for a small amount. |
| Will you ever owe us for arbitration or attorneys' fees? | Only for bad faith | The Arbitrator can require you to pay our fees if (and only if): (1) the Arbitrator finds that you have acted in bad faith (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b)); and (2) this power does not make this Arbitration Clause invalid. |
| Can an award be explained? | Yes | A party may request details from the Arbitrator, within 14 days of the ruling. Upon such request, the Arbitrator will explain the ruling in writing. |

Prepaid card is issued by Pathward, National Association, Member FDIC, pursuant to license by Mastercard International Incorporated.
© 2022 Pathward, National Association

Case 3:10-md-02143-RS   Document 3076-1   Filed 03/07/22   Page 1 of 6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISO DIVISION**

| IN RE OPTICAL DISK DRIVE PRODUCTS ANTITRUST | Case No. 3:10-md-2143 RS (JCS) |
|---|---|
| | **DECLARATION OF CHRIS WHIPPS RE PROPOSED PLAN OF DISTRIBUTION AND SCHEDULE** |
| This Document Relates to: ALL INDIRECT PURCHASER ACTIONS | |

# EXHIBIT B

I, Chris Whipps, declare as follows:

1.      I am employed as CEO of Sipree, Inc., d/b/a DigitalPay, which serves as one of the Court-appointed administrators of the settlements in this action. As the CEO of DigitalPay, I oversee the administrative services provided in this matter. I make this declaration to further outline those administrative services. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

2.      The total number of timely and valid claims received at www.dollarsfordiskdrives.com, via email to info@dollarsfordiskdrives.com, and via U.S. Mail is approximately 465,012.

3.      As set forth below, the total amount from the initial settlement funds is $204,999,138.10. After accounting for accumulated interest and approved payments from the settlement funds, the net distributable settlement amount is now $167,197,144.48:

| Total funds available (settlements plus interest) | $ | $207,071,998.09 |
|---|---|---|
| Taxes Paid from the Funds | $ | (430,265.69) |
| Attorneys' Fees | $ | (31,026,000.00) |
| Service Awards ($6,000 x 25 class reps) | $ | (150,000.00) |
| Administration Costs (including those expected to be incurred) | $ | (4,856,401.30) |
| Current balance | $ | 170,609,331.10 |
| 2% reserve | $ | (3,412,186.62) |
| Net settlement fund | $ | 167,197,144.48 |

4.      Taking the net settlement fund available, individual payments will be calculated on a *pro rata* basis based on the number of validly claimed internal or standalone optical disk drives.

5.      The following six payment options will be available to class members:

Option 1: Virtual Mastercard with Online & Point of Sale (POS) Use – $1,000 Maximum Limit. This option does not require a bank account. A virtual Mastercard is instantly activated with confirmation of name + mobile number, with no other registration needed.

Option 2: Physical Mastercard (pCard): Online & Point of Sale Use – $1,000 Max. This option also does not require a bank account for online / point-of-sale usage. The card only

1   requires activation – no other registration needed.

2   Option 3: Physical Mastercard with Online & Point of Sale & ATM Use – $9,999.99 Max.

3   This card activates instantly. No bank account or registration needed for online or point-of-

4   sale usage. An ATM feature is also available, but requires card registration and claimant

5   must have active bank account to withdraw funds.

6   Option 4: Amazon – $2,000 Max. Instant use and/or transfer to Amazon balance.

7

8   Option 5: Target – $1,000 Max. Instant use online or at point of sale (printout or Target app).

9   Option 6: Starbucks – $500 Max. Instant use online or at point of sale (with Starbucks app).

10   6.     Claimants will be presented with payment options according to the amount of their

11   validated settlement claim and the maximum value approved for an endpoint. For validated claims

12   up to $10,000 (the maximum for digital payments, per AML Compliance) claimants will have the

13   following choices:

14

| Level of Payment | Payment Amount | Payment Options | Maximum Amounts |
|---|---|---|---|
| **Tier 1** | **$3.92-$499.99** | **Target** | **$1,000** |
| | | **Digital Debit Card (vMC)** | **$1,000** |
| | | **Amazon** | **$2,000** |
| | | **Starbucks** | **$500** |
| **Tier 2** | $500-$999.99 | Target | $1,000 |
| | | Digital Debit Card (vMC) | $1,000 |
| | | Amazon | $2,000 |
| | | pCard – Online/POS | $1,000 |
| **Tier 3** | **$1000-$1999,99** | **Amazon** | **$2,000** |
| | | **pCard – Online/POS/ATM** | **$10,000** |
| Tier 4 | $2,000-$9999.99 | pCard – Online/POS/ATM | $10,000 |

23   7.     DigitalPay proposes to execute the distribution in two phases: "Initial Payment

24   Offering" and "Second Round Offering." During Initial Payment Offering, claimants will be sent

25   emails notifying them of the funds that are waiting for them.  Claimants follow simple, easy steps to

26   receive their payment – a process of four clicks, with no applications to download or to get in the

27   way of receiving money.  From DigitalPay's experience delivering litigation funds to consumers in

28

1   2020 and 2021, more than 80% of claimants are expected to receive funds in this phase of the

2   program.

3       8.    Payment notices sent in the Initial Payment Offering each have a pre-designated time-

4   to-live (TTL). After TTL expiration, DigitalPay will gather a file of claimants who accepted

5   payment during the Initial Payment Offering. A final assessment of funds remaining for distribution

6   will be completed, followed by the Second Round Offering. In this phase, DigitalPay will send a

7   final pro-rata payment to claimants who accepted funds in the Initial Payment Offering. This

8   payment will align with the same endpoint the claimant chose to receive funds in the Initial Payment

9   Offering. This process:

10      • Maximizes payout with 100% delivery to claimants who are proven to be responsive
11        and have validated email addresses;

12      • Provides continuity by sending the additional pro-rata payment to an endpoint the
13        claimant prefers;

14      • Provides finality of payment and delegates escheatment to the retailer or bank issuing
        the debit card;
15

16      • Is the closing event designed to take the settlement fund to as close to a $0 balance as
        possible (not including outstanding paper checks or final "bounced" digital pro-rata
17        payments).

18      9.    Epiq Class Action Claims and Solutions (Epiq) will mail payments to class members

19  that requested a payment by check or for whom the award value is too large to allow for digital

20  payment. This is estimated to be 8,753 checks as of the time of this filing. Epiq will also assist

21  DigitalPay with the customer service component of the digital distribution.

22      10.   Although one appeal remains pending, DigitalPay understands that this Court has

23  ordered distribution to proceed. Given this, Digital Pay and counsel for the indirect purchaser class

24  propose the following schedule:

25

26

27

28

DIGITALPAY DECLARATION RE DISTRIBUTION
CASE NO.: 3:10-MD-2143 RS (JCS)

- 3 -

| | Date for Completion |
|---|---|
| **Warm Up** DigitalPay emails claimants an initial notice (a "warm up") that communicates payment is soon coming and provides a date range of when payee will see payment. This email sets expectations and reinforces credibility of the payment to be received. | March 25 to April 23, 2022 |
| **Phase I: Payment Notification and Receipt** DigitalPay issues payments ("payment notification") to claimants via email. From this communication, claimants will be able to select where they would like to receive funds. This action transfers funds from the settlement fund to the possession of the payee. **Paper Checks Issued** Claims administrator Epiq to mail paper checks week of April 25, with 60-day expiration. | April 25 to May 6, 2022 |
| **Payment Expiration** All digital payments issued in Phase I will expire (each digital payment will expire 35 days from the rolling notification; the vast majority of payments taken will occur in a ~72-hour window from notification). While a payment is active—but has not yet been taken—payees will receive four emails to remind them they have funds waiting. | June 10, 2022 |
| **Process Payment Exceptions** Reissue digital payments as necessary and allow a further one week for expiration. | June 20-26, 2022 |
| **Report Results of Phase I** DigitalPay and Epiq to identify and report funds that have not yet been taken by payees. Final accounting report and reconciliation will be created, along with proposed Second Round Distribution amounts. A report on first round distribution will be filed with the Court with a proposed plan for Second Round Distribution. | July 22, 2022 |
| **Phase II: Second Round Distribution** Claims administrator DigitalPay securely delivers a final pro rata payment to all payees who took a | August 8-19, 2022 |

Case 3:10-md-02143-RS   Document 3076-1   Filed 03/07/22   Page 6 of 6

| Phase | Due for Completion |
|---|---|
| payment in the Initial Payment Offering (Phase I). This card is the named property of the payee and delivers live funds.  No bank account is required to activate and use any of the cards delivered.  This final phase delivers funds to all entitled claimants with the intent of taking the settlement balance as closed to $0 as possible (except for outstanding physical checks issued by Epiq).<br><br>Claims administrator Epiq to reissue checks with 30-day expiration to those who did not cash 60 days from first issuance. | |
| **Final Reporting**<br><br>Claims administrator DigitalPay to provide final report regarding the disbursement of the settlement funds.<br><br>Claims administrator Epiq to identify and report checks that have not been cashed 30 days from re-issuance.<br><br>Any remaining funds will be distributed to the Attorneys General for the Class jurisdictions for use in prosecuting consumer antitrust claims. | October 7, 2022 |

     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 7th day of March 2022, in San Francisco, California.

CHRIS WHIPPS