No. 24-4326
_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

In re: In re Blackhawk Network Data Breach Litigation.

Steven Pryor, Shane Scheib, Sabrina Singleton, Silvia Cortez, Brian O'Connor, and Kelly Rogers, individually and on behalf of all others similarly situated,

                  Plaintiff-Appellees,

v. Blackhawk Network, Inc. d/b/a Blackhawk Engagement Solutions,

                  Defendant-Appellees,

Mariam "Mabel" Brown,
David Lopez,

                  Objector-Appellants.

Appeal from the Order of the United States District Court
for the North District of California, 3:22-cv-07084, Hon. Charles R. Breyer, Senior, United States District Judge

### INFORMAL *PRO SE* REPLY BRIEF FOR THE
### OBJECTOR-APPELLANTS

Sr. David Lopez  
Tlahuapan 20-1, Colonia la Paz  
Oficina #235  
Puebla, Puebla, Mexico, 72160  
claims_info@newhampshirerights.com

Mariam "Mabel" Brown  
Box 9007  
Providence RI 02940-9007  
mbrown@sunchannel.net

# TABLE OF CONTENTS

Table of Contents………………………………………………...………... 2

Table of Citations……………………………………………………………. 3

Introduction………………………………………………………………….. 4

Argument……………………………………………...…………………..…… 5

Conclusion………………………………….………………..……… 17

Form 17 Statement of Related Cases……………….……………....……19

Form 8 Certificate of Compliance Briefs………………………………. 20

## TABLE OF CITATIONS

**Statutes and Laws**:

California Civil Code 1542………………..………….…………..passim

**Cases**:

*In re: Cathode Ray Tube (Crt) Antitrust Litig.*,
    2016 WL 3648478, at \*23 (N.D. Cal. July 7, 2016).............................. 10

*In re Transpacific Passenger Air Transportation Antitrust Litigation,*
    2024 WL 810703 (9th Cir. Feb 27, 2024)............................................ 10

*Knisley v. Network Assocs., Inc.,*
    312 F.3d 1123, 1126, (9th Cir.2002).......................................................7

*EEOC v. Peabody W. Coal Co.,*
    400 F.3d 774, 779-80 (9th Cir. 2005)..................................................... 16

## INTRODUCTION

As explained in the opening brief, this case surrounds a data breach of the website www.myprepaidcardcenter.com, a website for Pathward N.A., a United States bank, and Peoples Trust Company, a Canadian bank, cardholders. The website was operated by the subcontractor for the banks, Blackhawk Network.

Despite litigating and settling a Class Action about the data breach, nobody ever revealed the extent of the breach, exactly who it affected, what flaw caused the release of information, who accessed the data, or the present posture of the investigation into the breach (if any).

Blackhawk's customer service team represented to Appellants Mariam Mabel Brown and David Lopez[1] that their Pathward accounts were affected by the breach and that the accounts were frozen due to this. After Appellants filed objections, Blackhawk, without any explanation, asserted that their agents provided Appellants incorrect information. This revelation resulted in an objection to Appellants' standing, an issue never addressed by the district court until after the filing of this appeal.

---

[1] Class Counsel, seeking to arouse suspicion as to the Appellants' objections, complain about some typographical errors as to Appellant Brown's name. The record and emails from Blackhawk recognized the existence of Appellants' Pathward accounts that utilize www.myprepaidcenter.com, so it is unclear what the brouhaha is about.

4

# ARGUMENT

## I. APPELLANTS MAINTAIN STANDING UNDER THE BROAD DEFINITION OF THE CLASS

The district court never found Appellants lacked standing when they filed their objections. On the contrary, the district court ruled on the merits and stated in its Order that, "Any objections to the Settlement have been considered and are hereby overruled." ER-025 (at paragraph 8). It is unclear whether the district court even considered the standing argument until post-judgment in connection with the appeals bond matter.

For whatever reason, Class Counsel and Blackhawk disagree with the common sense suggestion by the Appellants that the class definition be narrowed to the specific 165,727 "unique names and email addresses associated with users who received notice of the Data Security Incident from Blackhawk," ER-139. Instead, to protect Blackhawk from having to litigate claims from people omitted from the list, Class Counsel and Blackhawk negotiated a broad definition: "All individuals whose Personally Identifiable Information or payment card information (which includes a card account number, the CVV or CVV2 number or equivalent, and/or expiration date) was impacted in Blackhawk Network, Inc.'s Data Security Incident." *See* ER-30 (requesting certification); ER-132 (settlement agreement

definition of the class); ER-132 (argument that definition comports to the complaint); ER-007 (post-judgment motion for bond stating the definition again).[2]

Neither Class Counsel nor Blackhawk advised in their brief how they determined who was and who was not affected by the breach. Class Counsel admits in their brief that they rely on and trust Blackhawk.

The Appellants fall into the wide and vague definition because Blackhawk's own employees advised that Appellants' accounts were affected by the data breach:[3] "Yes, was impacted your card," said Blackhawk to Appellant Brown in an email. ER-066. As to Appellant Lopez, Blackhawk's representatives stated, "Yesm [sic] the card it was affected but we have block the balance so the card can not be compromise." ER-050.

Blackhawk then filed vague self-serving statements with the district court claiming that the emails constituted an error, but they never explained how they

---

[2] Appellants do not dispute the district court's post-judgment dicta that limiting the settlement to the persons on Blackhawk's list of victims would eliminate standing; however, the present broad language including "all individuals" affected whether identified or not remains creates the standing of the Appellants. Indeed, even if the Appellants' accounts were not affected, but Blackhawk's customer service representatives froze them because they thought they were affected, then harm from the data breach exists.

[3] Blackhawk cites a post-judgment opinion of the district to suggest that Appellants never claimed they were harmed by the data breach. This dicta by the district court relates to the motion for appellate costs bond, not to the objections. Regardless, Appellants provided the district court with the emails from Blackhawk stating that their accounts were affected by the data breach. Blackhawk does not dispute the existence of the emails, but asserts their own employees were mistaken.

6

determined the error or why their own customer service agents advised the Appellants that their cards were affected. Perhaps Blackhawk simply looked at their list of 165,727 affected people to state that the information provided to Appellants was not correct. Appellants do not believe that their cases constitute isolated incidents. *See*, for example, the multiple motions to intervene in this appeal.

Class Counsel seems to recognize the specious nature of Blackhawk's bald-faced assertions, without explanation, that its own representatives mistakenly claimed that Appellants were not class members. At page 16 of their brief, Class Counsel opine that this appeal "hinges on" the "veracity" of Blackhawk's statements, "*If* Defendant-Appellee's proclamation is true, then Objectors-Appellants are not Settlement Class Members… ." The word "if" exists in their position because Blackhawk's "proclamation" lacks any factual information to provide insight for the flip-flop. *See Also* Page 19 (Blackhawk "maintained" Appellants are not class members); 25 ("*Assuming* the truth of [Blackhawk's] statements").

In *Knisley v. Network Assocs., Inc.,* 312 F.3d 1123, 1126, (9th Cir.2002), this Court explained that even where an objector has not participated in the common fund settlement, he may still have standing to appeal: if he prevails, a better

7

settlement might be obtained on remand in which he could participate. Thus, his injury is likely redressable on appeal.

Appellants appeal because the broad, expanded definition of the class sweeps them in and binds them. If Appellants prevail and this Court finds that the class definition should be limited to the specific 165,727 people on the list rather than "all individuals" whose data was affected, then the Appellants and those similarly situated could still sue for the data breach. While Appellants are not one of the 165,727 people on the list, but as shown by the admissions of Blackhawk's customer service representatives, they fall into the "all individuals" definition because the representatives made it clear that the Appellants' cards were frozen because of exposure to the data breach.

Class Counsel argues that "Objectors-Appellants lack standing because the injury (i.e., that Blackhawk has "stolen" the funds on their prepaid cards) are not redressable by the data breach action brought by Plaintiffs-Appellees." However, this misstates the Appellants' argument. Blackhawk "stole" the funds by purporting to protect them from the data breach. *See* ER-050 (email from Blackhawk explaining, "Yesm [sic] the card it was affected but we have block the balance so the card can not be compromise").

Class Counsel's promise to invoke collateral proceedings[4] to vacate the settlement if Blackhawk's claims turn out to be untrue does not protect the Appellants or those similarly situated. Class Counsel has no incentive to do so considering the small settlement and attorney fees earned. The veracity of the victim list should have been addressed prior to the final settlement.

Therefore, the Appellants clearly have standing to object to the settlement. Blackhawk's own employees admitted that the cards were affected by the breach and the freeze was to protect the breached information, and Blackhawk provides no real explanation other than what Class Counsel calls a "proclamation" that this information was mistaken.

More importantly, Blackhawk neither disclosed to Class Counsel nor to the district court how it determined which customers or accounts suffered exposure of their data, the nature of the breach, who obtained the data, nor the present posture of the investigation.

---

[4] Specifically at page 31, Class Counsel stated, "If Defendant-Appellee's statements—many of which were given under oath—are later exposed as untrue, Plaintiffs-Appellees would move the District Court to vacate the Class Settlement on the grounds of fraud and misrepresentation by Defendant-Appellee."

## II. EVEN IF THIS COURT ACCEPTS BLACKHAWK'S UNSUBSTANTIATED CLAIMS THAT THEIR AGENTS PROVIDED INCORRECT INFORMATION, THE DISTRICT COURT MAINTAINED A FIDUCIARY DUTY TO THE CLASS

Both Class Counsel and Blackhawk suggest that this Court should refuse to reach the merits of this appeal because Blackhawk's own agents advising the Appellants that their cards were indeed affected by the data breach somehow constituted a still unexplained "mistake."

Blackhawk does not dispute the flaws with the settlement, but instead argues in their brief that, "nearly everything that Objectors-Appellants say in their brief is beside the point," based on its own paradoxical statements that its customer service agents erred in advising Appellants that they were affected by the breach.

However, both the district court and this Court maintain a fiduciary duty to review the settlement for fairness and to protect absent class members. "This duty exists independent of any objection from a member of the class." *In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d 922, 929 (9th Cir. 2020).

"Even if a Court finds that a putative objector lacks standing to object, it may still consider that putative objector's objections to a class settlement, which may help the Court satisfy its fiduciary duties."*In re: Cathode Ray Tube (Crt) Antitrust Litig.*, 2016 WL 3648478, at *23 (N.D. Cal. July 7, 2016)); *In re*

10

*Transpacific Passenger Air Transportation Antitrust Litigation,* 2024 WL 810703 (9th Cir. Feb 27, 2024)(finding independent duty of court to review class action settlement terms regardless of the standing of the appellants).

While Appellants verily believe they have standing based on Blackhawk's own admissions in the emails that their accounts were affected by the data breach, if this Court finds that Blackhawk can simply retract the Appellants' standing by stating it provided incorrect information without more detail, the district court still erred in not protecting the class from the problems with the settlement as outlined in the opening brief.

### III. APPELLANTS DID NOT CONCEDE THAT THEY WERE NOT MEMBERS OF THE CLASS

Blackhawk argues that because the Appellants suggested that Blackhawk's own employees have inaccurate information, that this is a concession that Appellants were mistakenly identified as having suffered due to the data breach. On the contrary, Appellants merely pointed out the prejudice created by allowing an expanded definition of the class when there exists nothing in the record to determine how Blackhawk determined that its list of 165,727 persons constitute all of the affected users of the website. In other words, if Blackhawk's list is correct, and its customer service agents merely spew incorrect information about the breach, then Blackhawk could not be harmed by limiting the settlement to the

11

165,727 people. However, if Blackhawk's list is not complete and the settlement was limited to the 165,727 people on the list, then the Appellants and other similarly situated parties who are not on that list but probably suffered harm, would still be able to sue or initiate arbitration.

The mention of the internal inaccuracies within Blackhawk about whose data was breached does not constitute a concession that Appellants' accounts were not subjects of the breach. Appellants have no information verifying Blackhawk's bold and unsubstantiated assertions that its account review agents provide incorrect details. Rather, Blackhawk's claim of a "mistake" by those employees appears conclusory and without factual support.

Lacking details about the data breach, neither Appellants, Class Counsel, the district court, nor this Court could possibly determine whose data was accessed by the hackers as a result of Blackhawk's negligence. Quite frankly, nobody knows anything about the mysterious data breach other than the fact that a breach happened and now all claims are settled for a few dollars. The argument from Appellants was that Class Counsel and the district court were provided a conclusory guess by Blackhawk's litigation team, not that Appellants are not victims of the breach.

Blackhawk's employees stated unequivocally that Appellants' accounts were breached and, to date, the cards are frozen to protect the funds resulting from the

12

breach. This is what Blackhawk's employees disclosed to Appellants. Blackhawk's disavowing its own agents' information without explanation lacks credibility.

If Blackhawk is so sure that only 165,727 accounts were affected, it could simply have agreed to modify the definition of the class to "the 165,727 people on Blackhawk's list" and if it is discovered that other clients were affected, those persons would not be bound by the settlement and could sue. However, that solution does not serve Blackhawk's purposes to reduce liability in case someone or tens of thousands of people were omitted from the list.

### IV. THERE ARE NO VALID TIMELINESS ISSUES AS TO APPELLANTS' OBJECTIONS

Both Class Counsel and Blackhawk refer to the objections as late. However, as shown, whether deliberately or by coincidence, Blackhawk did not disclose to Appellants that they were subject to the data breach until after the so-called objection deadline.[5]

The district court did not find that the objections were late. Rather, the district court wrote, "Any objections to the Settlement have been considered and are hereby overruled." ER-025 (at paragraph 8). This necessarily means the district court reached the merits of the objections.

---

[5] The class administrator published the deadline only on emails sent to the specific persons and on the settlement website.

13

The docket sheet shows the initial deadline to file oppositions to Class Counsel's settlement motion to be April 5, 2024. ER-282 (Entry 50). However, the Clerk vacated the hearing date and moved it up by two weeks. *Id* (Entry 52). Then the Clerk vacated the hearing date yet again and moved it up by an entire month to May 31, 2024. ER-282 (Entry 56). In the interim, the district court received the objections on April 16 and April 19, 2024. *Id* (Entries 53 and 54).

With over forty-five days between the filing of the objections and the hearing date, Blackhawk was able to file a response to the objections just seven days after the filing thereof. *Id* (Entry 55). Class Counsel never responded to the objections and does not explain why it could not do so. Class Counsel cites no prejudice resulting from the alleged lateness of the objections and most likely waived any complaints it had as to deadlines.

Therefore, the allegations of late-filed objections presented by Class Counsel should not be considered a factor.

## V. CLASS COUNSEL INCORRECTLY SUGGESTED CALIFORNIA CIVIL CODE § 1542 DOES NOT APPLY TO NON-CALIFORNIA RESIDENTS

Citing no case law, Class Counsel downplays the harm of the California Civil Code 1542 waivers by suggesting Appellants need to be domiciled in California for it to have an effect on them. On the contrary, Section 1542 applies to causes of action *brought in* California courts or settlements governed under

14

California law. The present settlement is governed by California law and consists of state-based causes of action. The Blackhawk defendants are physically located in Pleasanton, California, so regardless of the domicile of the Appellants, suit would most likely be brought in California and California Civil Code 1542 interpreted there.

Worse, the agreement waives "any law(s) that are comparable in effect to California Civil Code section 1542," rendering any argument about the domicile of the objectors untenable.

## VI. PATHWARD N.A. AND PEOPLES TRUST COMPANY ARE INDISPENSABLE PARTIES

Class Counsel argues that – even though all of the claimants are customers of Pathward N.A. or Peoples Trust Company with no contractual relationship with Blackhawk, that these companies are not indispensable parties. Paragraph 3 of the Class Action Complaint, ER-207 explains, "Pathward uses Blackhawk to activate and manage certain prepaid incentive cards referred to as Pathward Prepaid Cards." ER-207. In other words, Blackhawk maintains no duty to the class members, Pathward does. Blackhawk is merely a subcontractor of Pathward and Peoples and the responsibility of keeping the cardholder data safe rests with Pathward and Peoples.

15

In fact, the Complaint alleges that Pathward, not Blackhawk, filed some of the data breach notices. ER-209 (at 10).

The cardholder agreement contains privacy provisions explaining the limited disclosures to third-parties that Pathward makes. *See* ER-055 and ER-056. As a result, the liability for the data breach that also breached the privacy terms falls upon Pathward N.A., not Blackhawk   It is assumed similar provisions are within contracts Canadian customers have with Peoples.

The failure to include indispensable parties resulted in the extremely low settlement amount. Indeed, the loss of financial data resulted in the interruption of Appellants' and other class members' Pathward cards which constituted an extreme inconvenience. The proper defendants are the banks. The banks, of course, would be free to sue Blackhawk for indemnification.

Instead, by omitting these indispensable parties, Class Counsel settled for a measly amount – less than $1,000,000, despite nearly 200,000 people on the "known" list and an undisclosed amount of people not on the list.

It is unclear how Class Counsel and the district court failed to recognize the need to join the indispensable parties Pathward  N.A. and Peoples Trust Company, and the resulting prejudice to the class is clear.

Under Rule 19, the questions that the district court should have asked are:  1. Is the absent party necessary (i.e., required to be joined if feasible) under Rule

16

19(a)? 2. If so, is it feasible to order that the absent party be joined? 3. If joinder is not feasible, can the case proceed without the absent party, or is the absent party indispensable such that the action must be dismissed? See *EEOC v. Peabody W. Coal Co.,* 400 F.3d 774, 779-80 (9th Cir. 2005).

In this case, Pathward N.A. and Peoples Trust Company could have been joined and it would not have destroyed jurisdiction. Joinder was necessary to fully determine the rights and responsibilities as to the data breach and recovery a fair amount from the class. Instead, the lawsuit settled the class claims against these banks by releasing all agents from liability without considering the superior liability of Pathward N.A. and possibly Peoples Trust Company.

## CONCLUSION

For the reasons set forth in the opening brief and in this Reply Brief, this Court should reverse or vacate the judgment of the district court, remand with instructions to vacate the settlement agreement, direct the district court not to approve a settlement that does not fully disclose the nature of the data breach and information about what it entailed, join Pathward N.A. and Peoples Trust Company as parties, require the district court to narrow the definition of the class or to provide proper advertising and notice, direct the district court to explore the appropriateness of a mere $1,000,000 payment in such a large financial data breach, and/or to compel arbitration along with other appropriate relief.

                                                Respectfully submitted,
                                                */s/ Miriam "Mabel" Brown*
                                                Miriam Mabel Brown
                                                */s/ David Lopez*
                                                David Lopez

                                                *APPELLANTS in pro per.*

Date: March 3, 2025

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

9th Cir. Case Number(s):   No. 24-4326

The undersigned attorney or self-represented party states the following:

[ ]  I am unaware of any related cases currently pending in this court.

[ ]  I am unaware of any related cases currently pending in this court other than the tcase(s) identified in the initial brief(s) filed by the other party or parties.

[X] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are: 24-6906 (appeal from cost bond related to this appeal).

Signature  */s/ David Lopez*    Date   March 2, 2025

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

9th Cir. Case Number(s)  No. 24-4326

I am a self-represented party.

This brief contains 3040 words, excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ X] complies with the word limit of Cir. R. 32-1(b).


Signature  _/s/ David Lopez_____  Date __March 2, 2025_____